UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TRENT LAARTHUR DAVIS,

          Petitioner,          Case No. 1:21-cv-368

v.                                    Honorable Paul L. Maloney

SHANE JACKSON,

          Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.      **Factual allegations**

Petitioner Trent LaArthur Davis is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.  On October 31, 2018, following a two-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of third-degree fleeing or eluding a police officer, in violation of Mich. Comp. Laws § 257.602a, felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f, two counts of assault with intent to commit murder (AWIM), in violation of Mich. Comp. Laws § 750.83, and four counts of using a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  On January 14, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 6 to 10 years for fleeing a police officer and felon-in-possession and 50 to 75 years for each count of AWIM.  Those sentences were to be served consecutively to four concurrent 2-year sentences for felony-firearm.  Petitioner is presently 51-years-old; his earliest release date is July 1, 2069.  *See*  https://mdocweb.state.mi.us/otis2/otis2 profile.aspx?mdocNumber=222605 (visited May 5, 2021).  Although Petitioner's sentence is a term of years, it is effectively a life sentence.

Petitioner did not timely appeal his convictions and sentences.  Almost a year after he was sentenced, Petitioner filed an application for leave to appeal to the Michigan Court of Appeals.  By order entered May 15, 2020, the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented."  *People v. Davis*, No. 352760 (Mich. Ct. App. May 15, 2020). Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  The supreme court denied leave by order entered November 24, 2020.  *People v. Davis*, 950 N.W.2d 727 (Mich. 2020).

On April 2, 2021, Petitioner timely filed his habeas corpus petition raising the same three grounds for relief he raised in the Michigan appellate courts, as follows:

    I.     Defense trial counsel was constitutionally ineffective in failing to offer or stipulate to an undisclosed felony conviction.

    II.    The prosecutor did not show or sufficiently prove that [Petitioner] had the intent to murder.

    III.   [Petitioner's] sentences are disproportionate, unreasonable[,] and [] cruel and unusual punishment.

(Pet., ECF No. 1, PageID.4-8.)

## II.   AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

4

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

5

### III.   Discussion

#### A.   Ineffective assistance of counsel

The charge of felon-in-possession requires proof of the element that Petitioner was, indeed, a convicted felon.[1]  Under the felon-in-possession statute, not all felonies are of equal significance.  More serious felonies, described as "specified felonies," preclude the use of a firearm for a longer period and require additional steps before the right to possess a firearm is restored.  Mich. Comp. Laws § 750.224f.

Petitioner argues that his trial counsel should have simply stipulated that Petitioner had previously been convicted of a felony—an undisclosed felony—rather than requiring the prosecutor to prove the element which necessarily required telling the jury that Petitioner had been convicted of delivery of less than 50 grams of a controlled substance.[2]  The Michigan Court of Appeals rejected the claim as meritless without explanation.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish such a claim, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.

---

[1] "Felon in possession is a statutory offense that is set forth by MCL 750.224f . . . the two essential elements of felon-in-possession . . . [are]: (1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored . . . ." *People v. Bass*, 893 N.W.2d 140, 158 (Mich. Ct. App. 2016).

[2] The "delivery" felony of which Petitioner was previously convicted is a specified felony under the statute.  Mich. Comp. Laws § 750.224f(10)(b).

*Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The "any reasonable argument" language from *Harrington* reflects the double deference owed. The *Harrington* court described what the habeas court should consider and what it should not consider:

> When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. In *Harrington*, the issue was whether counsel could have reasonably decided to ***not*** consult a blood expert. The *Harrington* court did not evaluate counsel's decision based on the reasons offered by counsel. Indeed, it does not appear that there was ever a hearing

7

that disclosed counsel's motivation for his decision.  Instead, the *Harrington* court considered the reasonableness of the decision in the abstract.  That approach necessarily follows from *Strickland*'s requirement that, to overcome the presumption of regularity, the defendant must show that the challenged action ***cannot*** be considered sound trial strategy.  If the reviewing court can conceive of a sound strategy that includes the challenged action, the matter is resolved.

*Harrington* reversed a Ninth Circuit *en banc* decision.  The *Harrington* court criticized the Ninth Circuit for limiting its inquiry to counsel's actual thinking:

> The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking.  Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins, supra*, at 526–527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).  After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome.  *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.  466 U.S., at 688.

*Harrington*, 562 U.S. at 109–10.  Under that reasoning, unless Petitioner shows the Michigan Court of Appeals that its proposed strategic reason for the challenged action was, in fact, not the reason for counsel's action, the habeas court does not need to inquire any further into counsel's actual reason for his or her action (or inaction).  Therefore, in Petitioner's case, this Court need not determine counsel's actual reason for not stipulating to an undisclosed felony instead of having the prosecutor specifically show the controlled substance delivery felony.  If the Court can conceive of a reason that the course of action might be considered sound trial strategy, the appellate court's rejection of Petitioner's claim would be reasonable.

Certainly, Michigan has criminalized conduct, as a felony, that the jurors might perceive as more benign than delivery of less than 50 grams of a controlled substance.  But that

8

does not appear to be the case for the narrower category of "specified felonies."  In addition to drug offenses, specified felonies are limited to felonies that involve the use of physical force, possession of a firearm, use of an explosive, arson, or burglary or breaking and entering of an occupied dwelling.  Mich. Comp. Laws § 750.224f(10).  The other specified felonies involve the use of force, the use of a firearm, or invasion of a person's home, conduct the jurors might well consider to be more dangerous and more like the conduct charged in Petitioner's criminal prosecution.  Counsel might reasonably have concluded that the jurors would be less troubled by the drug offense than the other specified felonies.

Because this Court can conceive of a sound strategic reason for counsel's approach, Petitioner has failed to show that the court of appeals' rejection of Petitioner's ineffective assistance claim is contrary to, or an unreasonable application of, the clearly established federal law of *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

    **B.**    **Sufficiency of the intent evidence**

Petitioner next argues that the prosecutor's evidence did not suffice to show that he intended to murder the officers when he fired shots into their squad cars.  Petitioner explains that no officers were hit by bullets and he had nothing against these officers.  (Pet., ECF No. 1, PageID.6.)  Indeed, he did not even know them.  (*Id*.)   Instead, Petitioner claims that he was suicidal and that he fired at the officers not to injure them, but to draw their fire and commit "suicide by cop."  (*Id*.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts

9

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The *Jackson* standard requires this Court to examine the evidence with specific reference to the state law elements of the crime. In *People v. Jackson*, 808 N.W.2d 541 (Mich. Ct. App. 2011), the Michigan Court of Appeals described the elements of AWIM as follows:

> The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Davis*, 216 Mich. App. 47, 53, 549 N.W.2d 1 (1996) (quotation marks and citation omitted). The intent to kill may be proved by inference from any facts in evidence. *People v. Lawton*, 196 Mich.App. 341, 350, 492 N.W.2d 810 (1992).

*People v. Jackson*, 808 N.W.2d at 548.  Petitioner's claim focuses only on the second element, his intention when firing at the police squad cars.  "[P]roof of intent[] is rarely established by direct evidence.  It has long been recognized in this circuit and elsewhere that circumstantial evidence[,] independent facts from which an inference of the ultimate fact to be established may rationally be drawn in light of common experience[,] can be sufficient to support a jury's determination . . . ." *United States v. Scruggs*, 549 F.2d 1097, 1104 (6th Cir. 1977) (citations omitted).

Although Petitioner could offer testimony claiming that he did not intend to harm the police, much less murder them, the jury was free to disbelieve that testimony.  That sort of credibility determination is exclusively the province of the jury and not subject to scrutiny as part of the sufficiency analysis.  Beyond such direct evidence of intent, the jury had no choice but to rely on circumstantial evidence and inference.  The circumstances that would create a credible threat so as to provoke return fire and, thus, "suicide by cop," are equally susceptible to the inference that the threat was real—that Petitioner actually intended to harm the police.  Based on Petitioner's own description of the evidence, therefore, the evidence would suffice to support a reasonable inference that he intended to murder the police officers.

Petitioner has failed to show that the court of appeals' rejection of his sufficiency claim as meritless is contrary to, or an unreasonable application of, the federal law clearly established by *Jackson*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

    **C.**     **A disproportionate, unreasonable, and cruel and unusual sentence**

Finally, Petitioner attacks his sentences as disproportionate, unreasonable, and cruel and unusual.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S.

11

63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner attacks his sentences as disproportionate and unreasonable.  Those claims are the product of state court sentencing decisions applying state law.

In *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–11.  *Milbourn* introduced the concept of proportionality as it is argued by Petitioner here.

Petitioner's sentence was imposed based on statutory sentencing guidelines.  The "prescribed sentence range" identified in *Milbourn*, however, was not the minimum sentence range generated by statutory guidelines.  At the time *Milbourn* was decided, there were sentencing guidelines, but they were a creation of the courts.  *See* McComb, *An overview of the second edition of the Michigan sentencing guidelines,* 67 Mich. B. J. 863, 864 (1988) (setting out the history of the development of sentencing guidelines in Michigan through 1988).

In 1998, the Michigan Legislature enacted statutory sentencing guidelines. Mich. Comp. Laws § 777.1 et seq. The statutory guidelines permitted departures if there was a "substantial and compelling reason for the departure . . . state[d] on the record . . . ." Mich. Comp. Laws § 769.34(3). The guidelines also effectively immunized from state-law attack the proportionality of minimum sentences that fell within the guidelines range. Mich. Comp. Laws § 769.34(10) ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."). Because the guidelines were created with reference to the principle of proportionality, further scrutiny of the sentences generated by application of the guidelines was unnecessary. *People v. Babcock*, 666 N.W.2d 231, 239–241 (Mich. 2003). The *Babcock* court concluded that minimum sentences outside the guidelines range required a determination whether there was, indeed, a substantial and compelling reason to justify the departure. *Id*. at 243–44.

In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne v. United States*, 570 U.S. 99 (2013), the Michigan sentencing guidelines scheme violated the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520–21 (relying on *United States v. Booker*, 543 U.S. 220, 264–265 (2005) (holding that the remedy for the unconstitutionality of the mandatory federal

sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory)).

*Lockridge* effectively stripped away the requirement that the trial court have a substantial and compelling reason for departing from the sentencing guideline because it was that requirement that, in part, rendered the guidelines mandatory. *Lockridge*, 870 N.W.2d at 518, 520–21. Without the "substantial and compelling reason" guidepost, there was no longer a standard by which to judge the propriety of departure sentences. The *Lockridge* majority held that, going forward, departure sentences would be reviewed for "reasonableness." *Id*. at 521. That is apparently the source of Petitioner's claim that his sentence is unreasonable.

The Michigan Supreme Court elaborated on the meaning of reasonableness in *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017). *Steanhouse* based its definition of a reasonable sentence on the definition of proportionality from *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990). Nearly three decades later, the court had come full circle: a sentence departing from the guidelines was improper if it was disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the

proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and/or *Steanhouse* are not cognizable in a habeas corpus action.

The *Milbourn* opinion offers some support for the proposition that the same proportionality principles are present in the United States Constitution's Eighth Amendment guarantee against cruel and unusual punishment. The *Milbourn* court quotes *Weems v. United States*, 217 U.S. 349, 367 (1910): "It is a 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Milbourn*, 461 N.W.2d at 9. But the quote from *Weems* is somewhat misleading. *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines. Mr. Weems' crime was making two false entries in a "wages paid" logbook relating to lighthouse services. His punishment for that crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal. Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos. And the fine and 'accessories' must be brought into view. The fine was four thousand pesetas,—an excess also over the minimum. The 'accessories' we have already defined. We can now give graphic description of Weems's sentence and of the law under which it was imposed. Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned. Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property,

15

> no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty. No circumstance of degradation is omitted. It may be that even the cruelty of pain is not omitted. He must bear a chain night and day. He is condemned to painful as well as hard labor. What painful labor may mean we have no exact measure. It must be something more than hard labor. It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution. In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands. Moreover, the "precept of justice" referenced by the *Milbourn* court was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ." *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285

(1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner's contention that his sentence is disproportionate or unreasonable raises only state law claims that are not cognizable on habeas review. Petitioner's claim that his sentences are cruel and unusual states a federal claim, but he has failed to show that the appellate court's rejection of the claim as meritless is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  May 6, 2021                         /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge